May I begin? Yes. Thank you. May it please the Court, Martin Stanley and Edward Barrett for the Plaintiff and Appellant Marco Milla. This is an appeal from a summary judgment motion Judge Reel was presiding. Besides that, he also presided over the issue of whether or not Mr. Vanderhorck, whose address we never knew, was inappropriately served late and whether or not the death of our expert witness on the key issues in the case should have been allowed to have been substituted. He simply just denied that without even an explanation. The person that died was the identification expert, the photographic identification expert that testified in the Superior Court habeas corpus petition proceedings, Dr. Schomer. And interestingly enough, the Superior Court in the habeas corpus proceedings had a mini-trial, like a trial on the probable cause issue that should have been had here, and said this. So if you just look at what he said on the card, number two is the shooter, it's really misleading. That's what the Superior Court Judge Wapner said about the positive identification by Jenkins, who is the key witness in this case, relied upon by the district court in a summary judgment proceeding with no trial whatsoever, and a summary. You argue that the district court, as you're arguing now, didn't consider the entire record and you specifically point to this Superior Court's habeas finding in your expert's testimony. But can you tell me what specific facts in that evidence should the district court have considered? Yes. If you look at the card that was shown, for example, attached to the search warrant affidavit, which was attached here into evidence, document 60-5, which is the search warrant affidavit, attachment four, I believe, was in five. Let me just make sure. Attachment five was Jenkins' photo identification report, and the only thing that was shown to the judge who issued the search warrant was the card which stated the guy on card E, slot two, is the shooter. There was no mention of the tape being lost, the 20 minutes of conversation that were had, the long time that was had about the thinking process. The notes by Detective Vanderhorck, who was there, who conflicted with Detective Uli, when he said at first, and I don't have the exact words in front of me, words to the effect of, I'm thinking about this, it kind of looks like the guy. That was all excluded from the arrest warrant and from everyone else in this case. And so the arrest was issued without the magistrate or the judge having full and complete information with regards to how Jenkins' identification was tainted. So not only was Jenkins' tainted in that way, but Jenkins prior to that time had never identified Mia, even though Mia was in a prior identification procedure card lineup shown to Jenkins. He said that's not the guy. That wasn't shown to anybody either. Now this is an identification case. The Superior Court correctly had the trial, and the Superior Court talked about the difficulties with identifications in this evolutionary process that we live in in the United States where we learn more and more psychology about identification procedures as we go. That's why this expert witness on those issues is critical, because that's someone that actually has knowledge of these issues, completely ignored by the trial judge and by the district court in this case. What about the specific facts going to the probable cause here that's in dispute? I was trying to figure from your briefs and find the facts that you think are in dispute. Can you give me a list of the facts that you think are in dispute regarding the probable cause determination? Yes. I can try my best, although I think I really stated them best in our original brief to the court at pages, it's document 67, and that's pages 7 to I think 14. I have a lot, or 15. I have a lot here to talk about. Unfortunately, I don't have enough time. I wish I had more time, and I understand the court's dilemma with regards to that. But if you look at the court's order below, the court says there are five reasons by why I don't find probable cause. Okay? So that's on page 20. It's a little fuzzy, but it's on page 22, I think, of the transcripts, if I'm not mistaken. And he says first, defendants identify multiple bases to support their belief that probable cause existed. Number one, I Now, if you look at the transcript from the court at the Superior Court proceedings, there's a lot of problems with that, that the judge identified. And if you read my, also our opening brief, or our opposing brief down below, we also talk about those. I've talked about some of those here. Number two, I witnessed Erica Hightower and Tracy McCombs' tentative identification of plaintiff as the shooter. While McCombs and Hightower were totally inconsistent according to, again, the judge below who had the trial and saw them and saw how they perceived what happened and talked about that. And the record is clear that even Detective Vanderhoek, when I took his deposition, stated a tentative identification is insufficient for probable cause. And this is the most experienced detective that they have in this case. He's retired. He's been doing this for a long time. Ollie was a brand new guy. He didn't have any training whatsoever. The only training that he had, if you look at his deposition excerpts, which back of the card, and that gave him the instructions on how to do it. Well, respectfully, the tentative identification is nothing. So then we go to number three. The fact that plaintiff was near the location of the shooting on October 2nd and October 3rd, 2001. So were a million other people in that Long Beach area. How does that establish or mean anything regarding probable cause? And then he has two more reasons that, again, mean nothing. The fact that plaintiff was affiliated with the 204th Street Gang, that's a very sad thing. Unfortunately in our society nowadays, many young men or boys are led astray. But simply because you're a gang member does not mean that you are a murderer. And it does not mean that you committed a murder on this particular day. So that respectfully has nothing to do with probable cause. It should be irrelevant. There's thousands of gang members, unfortunately, maybe even hundreds of thousands in the Los Angeles area. Does that mean that there's probable cause that they committed a murder? And then number five, the fact that plaintiff was arrested in May 2001 near the shooting location for assault with a deadly weapon with a firearm against an African-American victim. Well, he was never convicted. Nothing happened to that. That was the final thing. And just because he was arrested months before at some location near the shooting, arrested, not convicted, is that enough for probable cause? Those are the only things that were the five things that were cited by either the appellees. I get confused with the respondents sometimes because I'm in state court a lot. Or by the district court. And the fact that they talk about this, so really the only possible probable cause finding that it could be based on is if Jenkins was consistent and didn't have all these problems that weren't ever brought up to anyone. And it's kind of like bowling. Once the pin goes down about Jenkins' testimony being misleading, because that's what the court at the Superior Court found, then the whole of the defendant's case goes down. Because that was the evidence that was used to support the arrest warrant, to support the DA's decision, to support everyone else. So they can't rely on advice of counsel, which is really what they're trying to do. There's no evidence of that. No DA ever submitted a declaration. No DA was deposed. There's no evidence whatsoever of that. And if you look at the deposition excerpts from Vanderhoek and Uli in our case, they don't even remember what was talked about with the DA. They don't remember if the DA reviewed the papers that were given the DA in front of him. They don't know what was reviewed. They don't remember what they gave the DA. They don't remember much. They don't have a special murder book that they gave the DA, because all I think it was Vanderhoek said he didn't recall what they were given. Or someone said it was a stack of papers. If you want to have the time maybe while counsel is talking about it to find the exact page that that was on. But it's in our attachment to our opposition. So that, along with the whole slew of factors relating to the exclusion of our expert because of his death, and additionally the fact that we had our own expert, Lieutenant Strong, who testified in detail with detailed declaration that wasn't objected to, that was admitted. And I think there's a new case that just came down a little while ago, Cobb in the Ninth Circuit, that said it's not inappropriate to hear these experts on the probable cause issue, which was. Thank you. I want, before your time evaporates here, can you tell me and explain to me the preclusion theory, your preclusion theory to me. Because it seems like the state habeas court didn't find that there was no probable cause to arrest Milla, or that there was no probable cause for his prosecution, or that the lineup procedures were unconstitutional. So I'm just trying to figure out, are you saying that the factual conclusions that the state court made are controlling here? Well, this is what I'm saying. I don't believe, and I agree with your Honor, I don't necessarily believe that it's issue preclusion because we had the additional witness, Pimentel, and the new, it came out much later, years later, that started the habeas corpus proceeding going. I can't say that, but I can honestly say this. This is a summary judgment case. You got to look at both evidence, evidence on both sides. So while it may not be an issue preclusion issue, it's definitely evidence that the court below has to consider. And that's what justifies a triable issue of fact. It doesn't have to be an issue preclusion. It's something that, however, the court is duty bound to consider because there was an actual trial on the identification issues. But that's what you argued, wasn't it? It was. And I'm stepping back a little bit. I'm saying at the very least, because I didn't only argue that, I also argued that it was relevant for a bunch of, for the fact that it was evidence. So at the very least, I would suggest that that's evidence establishing a triable issue of cause. Now, whether it's conclusory or not, that's above my pay grade to make that decision and to argue that. That would not be fair to say that because I can't really honestly, in my own mind as a practicing lawyer for a long time, say that. But I can say this, that when a court's dealing with a summary judgment decision, the court, all of us, are duty bound to put the evidence from the defense on one side and see what evidence on the other side exists. And if there's no evidence, then you grant summary judgment. If there's very little evidence, maybe you grant summary judgment. But in this case, there's a lot of conflicting evidence. And to be honest with you, we have a difficult time. I think one of the things that happens in these cases, when cases are removed from the Superior Court, you sometimes end up in places that the defense favors. This is the reality of the situation, why so many cases are removed from the Superior Court of Los Angeles County. And in this case, I don't want to insult any district court judge, so I won't. But I don't think that these rulings here were anywhere close to being fair. I've never had a case where an expert dies and you don't get a chance to get someone else. That's pretty out there, as we say in Santa Monica, where I'm from. I wanted to ask you about this Vanderhoek. If the dismissal for failure to serve Vanderhoek is affirmed, has the statute of limitations run out on the case? I'm trying to figure out why this... Yes. Well, it would be because it would only be two years from the date of the incident under California law. So the judge, in that order, where he found that there was no good cause, said, well, plaintiff won't be prejudiced. And I don't understand how the judge could make that finding, that plaintiff would not be prejudiced, but that's the language that he used. Plaintiff will not be prejudiced if Vanderhoek is dismissed, because he's still got Ulley and the city. But we all know the city is a completely different entity and it's Ulley. And so, you know, what are we supposed to do with that? Do you want to reserve the balance of your time? I would love to, if that's okay with Your Honors. Unless Your Honors, of course, have more questions, which I'm happy to address any questions in this case. I would ask, potentially, that the Court consider sending us back, if the Court is kind enough to do so, somewhere else. Because of these rulings. Good morning, Your Honors. May it please the Court, Deputy City Attorney Sean Dabby Jacobs for the defendants, City of Los Angeles and Detectives Ulley and Vanderhoek. So, I, of course, think that the Court should affirm the motion for summary judgment. I don't think that the fact that the Court ultimately granted the habeas petition, after Salvador Pimentel came forward, negates the probable cause and negates everything that went on in our briefs, and he may have mentioned it in his briefs as well, is that this was a second habeas petition. So this, so what happened was that procedurally, they went to, you know, they arrested Mia. The DA filed the charges. There's no evidence of any pressure or coercion or misleading of the DA. And then the DA filed the charges. They went to trial. There was a prelim. There was a trial. There was cross-examination. Mia was represented by an attorney at all of these criminal proceedings. They actually, they asked many questions about the eyewitness identifications and cross-examined, and they had the expert testify about all of that. And then after that happened, and there was a conviction in the life sentence, they made a motion for a new trial, brought in evidence of the alibi, brought in evidence of all of that, argued that the photo IDs were tainted. The Court rejected the same trial court that ultimately granted this habeas petition, rejected that, denied the motion for new trial. We all know this. Where is this leading? So the point is that, is that the fact that the habeas petition was granted does not mean that it negates a probable cause. For example, with the photographic lineups, they were not procedurally unconstitutional. Even though Mia did appear in two photo lineups, they were not, first of all, the detectives didn't even know that Mia was in the first photo lineup because it was a photo lineup, the 16 and the 12 packs, as it were, were created by a different gang officer for a murder that had happened a couple of years before. And Mia looked very different from how he looked at the time. Well, how can you, I guess I'm just trying to figure out, how can you say that no reasonable jury could find the probable cause was lacking here? We have a state court judge who made a series of factual findings that very strongly suggest that the probable cause on the basis of the photo identifications was lacking. So why couldn't a jury find the same? Well, I think it's because it's only in hindsight. The same court made... But don't we have to look at the evidence at this point in the light most favorable to the plaintiff? Yes, and even if... And so looking at it in the light most favorable to the plaintiff in light of that, why isn't there a question of material fact on that here? Because even if you look at the photographs in all the different lineups, which we presented with our motion, and I'm sorry I don't have the page sites for all of the different photographs, but they're not unduly suggestive. They're not... Well, he's in two of the... Isn't he like in two of the lineups? He's in two of the lineups. Mia's in one of... I forget if he's in the 12 or the 16 pack from early on, and then he's in the six pack. Is anybody else in two of the lineups? No, I don't believe so. But the reason that it's not unduly suggestive and it does not negate probable cause is because Mia didn't look the same as he did in the six pack that the detectives created for this particular case. He was a few years younger. At the time of this, when this case happened, he was either 18 or 19, and the earlier photo lineups were when he was 15 or 16 years old, and so he looked very different. He had a lot more hair. He looked a lot younger, and no one recognized him. Counsel Judge Gould, if I could ask you a question about that. So how many years was he imprisoned before being released? About, I believe, 12 or 13, close to 13. So I guess the question on my mind is, why aren't all these issues, issues that raise a fact issue, where in terms of the system that there should be a jury deciding them instead of just a trial judge with summary judgment, or even our panel? Because there are no disputed issues of fact. The court had, the court did not improperly, I mean, the detectives, I'm sorry, did not improperly focus on Mia. When they went about developing their case, they actually had somebody else that they were looking at, and they showed six packs of a different suspect, Martinez, who they originally thought would have been the suspect. But there are questions, I mean, in terms of, I mean, it seems like your opposing counsel thinks there is a question of fact regarding specifically the photo alignment and whether that was problematic. You don't think there was. You think it was fine. Why wouldn't we let the jury decide this? I mean, and that's the only one example. There's others as well. Well, I think the fact that a witness is in two photo lineups does not automatically make it constitutionally infirm. There's multiple cases, we cite them in our brief, United States versus Simmons, United States versus Portillo, where in the Simmons case, the two different suspects appeared in multiple photographic lineups, and the court did not find them constitutionally infirm, in part because in the case of Simmons, there was no evidence to show that any of the witnesses were told who they should be picking, or there was a suggestive interrogation. In Portillo, the suspect challenged the photographic ID, arguing that he was the only one that had been in the six-pack and an in-person lineup, and that the six-pack was suggestive because only one other person was of the same nationality that he was. And the court, and that was not unduly suggestive. And if you look at the photo, sorry, go ahead. Sorry, I just, I didn't see any argument in your brief suggesting that the district court actually considered all the evidence in the record in granting summary judgment. Do you think you said that? Because I don't think that you said that anywhere in your brief. I don't know if I would have said that. I mean, if Your Honor says I didn't, I probably didn't. I'm just trying to, so if the district court, I mean, the sense is that he didn't take in everything here, you know, what Mila's expert witness or the state court's findings in the habeas proceeding, I mean, it seems like all of that seems relevant to the probable cause determination or to whether the lineup was permissible or unreasonably suggestive. And I guess I wanted to give you an opportunity to point to the record if you think the district court did address evidence of addressing those issues. Well, I think in his ruling he does point out that he doesn't think the photographic is suggestive. And even though he does, it's not a long ruling. Yeah, it's more like declarative statements. I mean, I obviously don't, can't get into the district court's head or know exactly what he was thinking, but I would assume by, because he picked out those things that he did look at the record and did find, went through the analysis and found that there was not a suggestive lineup, that there was probable cause. I think it was reasonable for the detectives to, and just before I leave the photographic lineup, the other reason that I think shows that the photographic lineups weren't, or the six packs and the 12 packs and what have you, weren't unduly suggestive is that, you know, there were many witnesses that couldn't ID or positively ID, and some made only tentative identification. So I think if it was so clear that it was unduly suggestive, everybody would have been like, oh yes, that's absolutely him, because the detectives would have, you know, I think there would have been more evidence that, or there would have been any evidence that the detectives were like, well, don't you think that it's that guy over there that that was the, you know, and just sort of leading the witnesses along and there was not, there's no evidence of any of that. What about Detective Vanderhorck being dismissed from the lawsuit? I think, was that with prejudice? I believe so. I don't know. I'm sorry, off the top of my head. I didn't look at that when I was, I didn't focus on that aspect. But I guess when you made the motion, had he already been served, I guess? He had, so what happened was he had already been, we had agreed to accept service for him by then. But that was after, they filed the lawsuit in August and we agreed to accept service for him the following July. So that's 11 months later and they still didn't send us a summons or, you know, the new thing. So on August 18th, now more than one year after they filed the lawsuit, they, we stipulated that he was, that Vanderhorck was served by that time. And that is well beyond the 90 days that Rule 4M allows for. And there's no, there's no showing. Well, so when we're reviewing for abuse of discretion, I think Rule 4M gives, you know, ordering that the party be served at a, in a certain time. And I guess here he had already been served by the time the motion was filed. Is that right? Probably. Because I think, I think what they did was they served, they accepted service on his behalf and then filed the motion. But as Federal Rule 4D-5 says, an agreement to give an objection to personal jurisdiction or to venue. So do you agree with, with Mila that Mila doesn't need to show severe prejudice to excuse the untimely service? He just needs to show good cause? I think he needs to show both. I think he needs to show good cause and prejudice under the case law. If you look at we versus Hawaii, Townsville versus County of Contra Costa, and good cause is not excusable. So if we, let me just say, if we respectfully, if we, if we disagree, if I disagree, if the district court applied the wrong standard, do we need to reverse it? I'm sorry, say, I didn't hear the question. If the district court, if I find the district court applied the wrong standard, would that require reversal? I don't think so in this case. Tell me why. Because there's no, there's no good cause. It's, he waited basically a year. It's not ignorance of law. It's not inadvertence of counsel or mistake of counsel even. And he's not prejudiced here because he does have other defendants in this case. What Vanderhoek, Vanderhoek and Ole are sort of both in the same position. So had, for example, had Vanderhoek been in the case, I wouldn't have written the motion for summary judgment really any differently. I just would have used Vanderhoek's name probably a little more often than I did as opposed to saying, but I mean, in most of the cases, it's, they were working in tandem together. So it's not like one person did one thing and somebody, and the other one did a different thing so you can sort of separate it out so that you'll, somebody violated something or somebody didn't violate something. I mean, they were working together on this case. So they have, they have the defendant. They have the city as well. And actually, by the way, we raised Monell, we raised a Monell defense and a qualified immunity defense in our motion for summary judgment. I think the court made a ruling on the Monell defense. I don't think it addressed the qualified immunity in its ruling. Before your time is up, because you just have a few seconds here, I did want to ask you also about the Brady, the alleged Brady violation. And do you agree with opposing counsel that evidence that he described was not disclosed at trial? I'm not asking you whether you agree that it was Brady, you know, material, but rather just, I just want to know factually whether or not it was disclosed. Everything was disclosed. They, if you look in the chronolog of the, of the detectives. So you disagree with counsel that those items were not disclosed? Correct. Because everything, they, they had, they had all the photo IDs. They had the quality of the tapes. They had all the tape recorded, the tape recorded, most, all of the interviews were tape recorded and there was a tape recording log that listed, you know, interview of Jamar, Jamar Jenkins. Tape number one, two, three, four, five, or whatever, on whatever date. And so all of those were listed, including, including the, you know, the miss, the garbled tape and the second tape, everybody's tape recordings, Jenkins, Hightower's, everybody's were listed. They also in, in many instances in their chronological log that detailed everything that they did in the investigation, they, they listed the tape numbers of the key witnesses in that as well. And they presented all of this to the district attorney. The fact that, you know, 12 or 13 years later, they don't remember what they, in a deposition, whether they did or they didn't, you know, it's not clear what documents they had access to at that deposition and whether they could look at the chronolog and see whether they gave everything to the, you know, what the correct answer would have been, but they did present all of this to the DA. They gave them a follow-up investigation that talked about how they initially focused on Martinez and what led them to Mia. Thank you. Judge Gould, do you have any other questions? No. I have one more question. Why weren't the plaintiffs entitled to get a substitute expert? Well, we did not oppose the motion down below, but I think in terms of, they weren't prejudiced by it in this case because the expert that they had, Steve Strong, did, when he submitted a declaration in opposition to the motion for summary judgment, he talked about the defective photo identification process. They could have, in opposition to the motion for summary judgment, brought in the testimony about the, you know, about why eyewitness identification is unreliable, and I think that just goes back to, and Steve Strong's declaration, actually, we did file objections to, it doesn't look like the court ruled on them, because Steve Strong's declaration, he says, we violated all these different procedures, but he doesn't tie them to a single LAPD procedure, law, a post, you know, which is a California Police Officers Standards and Training Commission, any of those policies or procedures that were, there were any violations to. You filed objections, did you say? We did. And as I said, I don't think they were ruled upon, but we did file them, and I think they're in the, they're probably in the, either the last or the second to last excerpt of the record. But at the end of the day, the judge, what, didn't rule on the objections. Not specifically, but maybe that's, I mean, and again, I can't get into Judge Reel's head, but maybe that's part of the reason why he granted the motion to begin with, because maybe, maybe he looked at the declaration and didn't, didn't think it was admissible or didn't find it helpful or. But we don't know one way or another. We don't know. Okay, thank you. But, I mean, but the fact that, but I think the fact that, you know, the whole reason, there was, nobody thought there were any problems with probable cause, with the photo identifications or anything. What do you mean nobody thought? Well, the courts, in terms of, as the criminal trial was proceeding and all of that, until you got to the habeas proceeding, and Pimentel, you know, basically almost drops out of the sky 12, 12, 13 years later or whatever it is, and says, I was there, I know both of them, I know it wasn't me, I know it was the other guy. And so then at that point, and it's only at that point that the court, that the trial court goes back, who had denied an earlier habeas and denied an earlier motion for new trial, says, look, as a trial judge, just practically, everybody knows that eyewitness testimony is unreliable, so then he's sort of, it's sort of this 20-20 hindsight, and that's not how you look at probable cause. The question is, what did these officers know at the time that they were investigating and the information that was available to them? And there's absolutely no evidence that they should have known about Maria Flores or known about the alibi, because, or, well, they knew that he, sorry, he claimed that he shouldn't be, that he wasn't at the scene, but nobody would have known that he said, oh, somebody else did it, because no one told them that. They tried to interview the girlfriend, they tried to interview the girlfriend's roommate, they tried to investigate this. Thank you. All right. Thank you. I'm above my time. Thank you very much. So I thank you for the extra time. Yes. Thank you. Thank you, Your Honors. Thank you. May it please the Court again. Well, this alibi issue is kind of important, because it was a completely identical alibi given by Velardi and Mia, even though they were kept separated the entire time from the time of the arrest, according to the officers' depositions. So that wasn't fully investigated either. And the admissions in the depositions from Vanderhoek and Mia talk about they didn't discuss these things with the DA. They don't remember discussing, they remember discussing some of the things with the DA, because it's 12 years later, but they only remember some of them, not all of them. Of course, that's a credibility issue. That has to go to a jury, like Your Honors have suggested. Now, there's a couple of things that are missing from counsel's argument besides the alibi. I'll try to get through this quickly. Number one, the district court didn't even have a hearing for us. The guy was in prison for 12 years. We didn't even get an oral argument, so nothing could be presented in any way. Number two, there's no evidence whatsoever he considered anything whatsoever of our experts' declarations. He didn't mention anything in his decision, and he basically just mirrored whatever the defense said in their motion. Number three, on this issue of there was a prior habeas corpus, that was as to was found right after the trial, and they didn't do an investigation to find anybody that knew what was going on. She was found. She came forward, and the reason why it was denied on that ground, I believe, if I'm not mistaken, I asked Mr. Barrett, who was there, was because she was, it was new evidence, and they didn't, they should have found her before. It didn't go to the merits. So that's something important. Then, this issue about the tape recordings, well, the judge commented about it being 20 minutes before Jenkins finally agreed to it being Mr. Mia. What they, what was not discussed by counsel that was mentioned in our brief was every testimony that was on the tape, or every question and answer was on the tape, was completely leading. If you read it, it's in our brief. It was not a, and they agree, they're not supposed to ask leading questions. That's what they testified to in their deposition, but the only, the part that was erased, who knows what was happened, but the part that was on there was completely leading. We also have this issue about missing evidence. Well, the photo that was given to the defense attorney down below had a, was a photo of Mr. Downer, Mr. Munoz, Downer. It didn't have a score on his face. And all the witnesses were, who were talking about identification, were talking about, well, he, this one person in the lineup, he's the only one, has a scar on his face. That was Mr. Mia. Downer actually had scars on his face. Somehow, that picture didn't have any scar on it. That was, and he was the real shooter. The other thing is, we asked, well, why wasn't the Cal Gang's photos given? There were nine people identified by Officer Maldonado, who was the officer that gave them Mia and Downer as names, gave Uli those names, saying, well, these might be the people. Nothing else was done with any of those other individuals. They said, well, we looked at the Cal Gang's photo on Mr. Mia, and we saw he had a scar on his face, so that's the one person we put in the lineup. He didn't put the other ones in. There were possibles. And there's no evidence as to why Mr. Downer's photo did not have a scar on it, or whether it did or did not, why it wasn't provided. We couldn't get the Cal Gang's photos from them. Let me ask you this. Why, what, on what basis do you urge us to disturb the Judge Reel's conclusions about your militia's prosecution? On what basis? Yeah. Well, those are the exact same in California, respectfully, Your Honor. You have to prove lack of probable cause. That's the issue. And that's the only issue that he really found in the decision that he made. But isn't a conviction conclusive evidence of that? Well, the conviction was set aside, and he's actually been found factually innocent by the habeas corpus petition that was filed, and thereafter by the petition for factual innocence. So if Your Honor is correct, respectfully, then you could never bring a case any time there was a conviction. That cannot be the law in the United States. You can't bring a civil rights case 30, 40, the guy spends 40 years later, and you can't bring a civil rights case because he was convicted originally, even though they found that it was a defective conviction and set aside the conviction. That wouldn't be fair or right. And I'm sorry to, I know you're from New York, and I apologize. That's, you know, maybe something that I know a little about. But, and let me just check my notes. The alibi. Oh, the issue about Vanderhoek. You know, she said 11 months, but the case was in state court, if I remember correctly, for a while. Then it was finally removed to federal court. And their initial disclosures came out. The day they came out, I thought, oh, we're going to get the address for Vanderhoek, because there's a lot of Vanderhoeks. Okay, we put some of them in my declaration in opposition. A lot of them. I was surprised. One is even another person working at LAPD. So we were trying to serve every Vanderhoek in town. And in the meantime, I put my declaration in, and then they finally give us, or before that, they give us the initial disclosure, and they don't even give us the address. Thank you. They say, we'll accept service. Thank you. Thank you. Thank you very much. Thank you, Mr. Stanley and Ms. Jacobs, for your oral argument presentations here today. The case of Marco Milla v. City of Los Angeles is submitted.
judges: Parker, Gould, Murguia